The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, in a Form 21 Agreement approved by the Industrial Commission on May 16, 1985, and in a Pre-Trial Agreement dated July 5, 1994, as:
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Harleysville Mutual Insurance Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage was $429.30, yielding a compensation rate of $280.00 per week.
5. Plaintiff has been paid temporary total disability compensation at the rate of $280.00 per week since February 21, 1985.
6. A notebook containing the plaintiff's medical records was stipulated into evidence.
7. Seven videotapes were stipulated into evidence.
8. The parties stipulated into the record as part of the Pre-Trial Agreement an Agreement dated May 30, 1991; a Consent Judgment filed August 30, 1991; an Order Directing Distribution of Third-Party Recovery filed July 11, 1991; and an Order filed January 27, 1993, all pertaining to settlement of plaintiff's third-party claims. Subsequent to the second hearing, the parties stipulated into evidence a copy of a Release and Indemnity Agreement dated November 11, 1992.
RULINGS ON EVIDENTIARY MATTERS
The objections raised by counsel at the deposition of Dr. William Richardson are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
* * * * * * * * * * *
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional:
FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was 39 years old. He completed his GED. His prior work experience includes route delivery service, farming, magazine delivery, reading gas meters and truck driving.
2. Plaintiff began working as a truck driver for defendant-employer in 1983. On February 21, 1985, plaintiff sustained an admittedly compensable injury by accident when a tractor trailer he was operating was struck from the rear by another vehicle which was traveling at approximately 90 miles per hour. As a result of this accident, plaintiff sustained an injury to his back.
3. Plaintiff continued working for defendant-employer doing light-duty jobs until August 1985.
4. On February 17, 1986, Dr. R. A. Appert performed a laminectomy/diskectomy at the L5 level on the left. On November 16, 1986, plaintiff underwent a further laminectomy and fusion at L5-S1 for treatment of lumbar instability.
5. After plaintiff continued to experience back pain, he was referred to Duke University for evaluation. Dr. William Richardson, an orthopedic surgeon, performed a repeat bilateral fusion at L5-S1 on June 3, 1988. By July 17, 1988, plaintiff had a solid fusion at L5-S1 and was able to walk two miles per day and was no longer taking any medications.
6. Plaintiff reached maximum medical improvement as of June 11, 1990. He has a 37.5 percent permanent functional impairment to his back as a result of the compensable injury by accident.
7. Plaintiff has chronic back pain and has work restrictions of lifting five pounds repetitively, lifting fifteen to twenty pounds occasionally, and a maximum lifting of forty pounds; sitting for twenty-five minutes — standing forty to forty-five minutes; changing positions every forty-five to sixty minutes; and work hours of four to six hours per day.
8. Plaintiff has participated in work hardening programs, pain clinics, back school, and has received physical therapy.
9. Beginning in June 1993, defendant-employer provided a rehabilitation nurse and several vocational counselors to assist in plaintiff's return to work. These individuals assisted plaintiff in vocational placement efforts, accompanied him to the Job Service of the Employment Security Commission, provided job leads, and monitored his progress.
10. Vocational counselor Meredith Ellis referred plaintiff to a local photography studio to interview for a light delivery position. Plaintiff did not apply for this job as requested, giving as his reason that he was unable to get in and out of the delivery vehicle. However, plaintiff owns and regularly operates a pickup truck. In the videotapes taken by private investigators hired by defendant-employer, plaintiff is repeatedly shown operating his pickup truck and getting in and out of the vehicle.
11. Ms. Ellis also identified a position for plaintiff as a video arcade attendant which involved monitoring game machines and making change. Plaintiff refused to apply for this job because he did not want to work around teenagers.
12. Ms. Ellis referred plaintiff to an industrial security officer job at Security Forces, Inc. On August 11, 1993, plaintiff met with Ray Goodwin, the district manager for Security Forces, which provide security officers to local industry. At that time Security Forces had three security officer positions available. Plaintiff brought with him to the interview his medical records, which Mr. Goodwin reviewed. After reviewing the records, Mr. Goodwin informed plaintiff that he had a job for him which fell within his restrictions. Plaintiff expressed an interest in starting out working two to three days per week, which was acceptable to Mr. Goodwin. Plaintiff also preferred the day-shift, which also was available. The security officer position required a minimum amount of walking (ten to fifteen minutes per hour), with the remainder of the time spent sitting or standing, at plaintiff's option, checking identification badges and signing people into the industrial facility to which he was assigned. Security officers are not required to arrest or confront intruders, but are trained to summon law enforcement officers. All of the work sites were in the Nashville-Rocky Mount area. Mr. Goodwin asked plaintiff to complete a job application, but plaintiff declined. The job as security officer was approved by both Dr. Richardson and Dr. Grubb. Plaintiff would have been offered employment at Security Forces had he actually applied for the job. In the opinion of the undersigned, plaintiff did not justifiably refuse to apply for the position at Security Forces, which was suitable to his work capacity.
13. Plaintiff testified at the hearing that he was unable to do yard work, house maintenance or vehicle maintenance and continued to experience disabling back pain. Plaintiff's testimony concerning the extent of his disability is contrary to the activities he was observed engaging in during April 1992, November 1992, and November 1993, by the private investigators hired by defendant-employer. In fact, plaintiff was able to do work involving bending, stooping, lifting, carrying and walking. Plaintiff was able to bend repeatedly at the waist and lift wooden steps and to lift and carry bags of dog food weighing approximately twenty-five to forty pounds each.
14. On one occasion, plaintiff was using his tractor to repair ruts, approximately two to three feet deep in his front yard, which had been left by log skidders. This work required plaintiff to change gears on the tractor and to repeatedly twist and turn to see the work being done behind him. Plaintiff repaired the ruts in his yard approximately one week after he saw Dr. Richardson at Duke, complaining of increased pain. He also was observed crawling underneath a trailer and lying on the pavement under or near the trailer.
15. Plaintiff's attorney rendered valuable service to him in this Workers' Compensation matter; the usual, customary and reasonable fee in such matters is 25% of the compensation determined to be due to the plaintiff.
* * * * * * * * * * *
The foregoing findings of fact and conclusions of law engender the following additional:
CONCLUSIONS OF LAW
1. On February 21, 1985, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. If an injured employee refuses employment procured for him which is suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified. N.C. Gen. Stat. § 97-32.
3. As a result of the compensable injury on February 21, 1985, plaintiff was disabled from work and is entitled to receive temporary total disability compensation at the rate of $280.00 per week from February 21, 1985 through August 11, 1993, which has already been paid by defendant-employer to him. Plaintiff is not entitled to continued temporary total disability compensation since, in the opinion of the Full Commission, plaintiff's refusal to accept the employment offered to him on August 11, 1993, was not justified. N.C. Gen. Stat. § 97-29, 97-32.
4. Plaintiff is entitled to compensation at the rate of $280.00 per week for 112 5/7 weeks for the 37.5 percent permanent partial disability he sustained to his back as the result of the compensable injury by accident. N.C. Gen. Stat. § 97-31(23).
5. Defendant-employer is entitled to a credit for the temporary total disability paid plaintiff from August 9, 1993 through the present. N.C. Gen. Stat. § 97-42.
6. Defendant-employer shall pay all medical expenses incurred, or to be incurred, by plaintiff as the result of his compensable injury on February 21, 1985, when bills for the same have been submitted through defendant-employer and approved in accordance with procedures approved by the Industrial Commission. N.C. Gen. Stat. § 97-25 (before amendment).
7. In 1992 plaintiff and his wife received a $75,000.00 recovery from the underinsured motorist carrier for defendant-employer. This settlement was subject to an attorney's fee of $25,000.00. Based upon the reasonable inference that one-half of the recovery obtained by plaintiff and his wife was payable solely to plaintiff, defendant-employer is entitled to a further credit against permanent partial disability benefits due plaintiff in the amount of $25,000.00. N.C. Gen. Stat. § 97-10.2. N.C. Gen. Stat. § 97-10.2 expressly provides that an employer shall have a lien in the amount of all benefits paid or to be paid under the Act. Defendant-employer's existing lien exceeds the amount of the recovery already paid to plaintiff from the underinsured motorist carrier, and the only way to protect defendant-employer's lien is to allow a credit for the payment already received by plaintiff against permanent partial disability benefits due him. Since the amount of the $25,000.00 credit awarded herein exceeds the total of benefits to which plaintiff is entitled for permanent partial disability, reduced by the credit allowed for temporary total disability payments made since August 11, 1993, plaintiff is not entitled to further benefits under the Act, although the Full Commission, in its discretion, will not permit offset against the 25% of the compensation otherwise due plaintiff that would go for plaintiff's attorney fees with respect to the permanent partial disability portion of the award.
8. Plaintiff's attorney rendered valuable service to him in this Workers' Compensation matter and is entitled to a fee of 25% of the compensation due plaintiff for the permanent partial disability portion of the award irrespective of any credits or offsets due Defendant. Carrie Turner Bennett vs. CarolinasMedical Center, IC No. 218491 (filed 6 March 1995).
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
AWARD
1. Plaintiff is entitled to compensation for an additional 112 5/7 weeks for a 37.5 percent permanent partial disability of the back, subject to a credit in Defendants' favor for temporary total disability benefits paid since August 11, 1993, through the date of this award and a further credit in Defendants' favor in the amount of $25,000.00 pursuant to N.C. Gen. Stat. §97-10.2. Permanent partial disability benefits are payable from August 11, 1993, when plaintiff's total disability ended. Inasmuch as the total of defendant-employer's credit exceeds the amount of compensation due plaintiff for permanent partial disability, plaintiff is entitled to no further compensation benefits under the Act.
2. In the discretion of the Full Commission, the $25,000 credit shall not extend to the attorney fee otherwise due plaintiff's attorney on the permanent partial disability portion of the award and Defendants, therefore, shall pay to plaintiff's attorneys the sum of $7,889.70, being 25% of the amount otherwise due Plaintiff for the permanent partial disability portion of the award.
3. Defendant-employer shall pay the costs.
 S/ ____________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________ COY M. VANCE COMMISSIONER